IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Harleysville Mutual Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.: 9:04-23412-23 |
| v. | ) | |
| | ) | **ORDER** |
| Cambridge Building Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court upon Defendant Cambridge Building Corporation's ("Cambridge") motion to dismiss based on abstention grounds. For the reasons set forth herein, the court grants Defendant's motion.

**BACKGROUND**

Plaintiff Harleysville is a Pennsylvania-based insurance company authorized to do business in South Carolina. Defendant Cambridge is a South Carolina corporation with its principle offices in Beaufort County, South Carolina. On December 17, 2004, Plaintiff Harleysville filed this declaratory judgment action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* and Rule 57 of the Federal Rules of Civil Procedure, seeking a declaration of the parties' rights and obligations pursuant to commercial general liability ("CGL") policies issued by Plaintiff to Defendant.[1]

The CGL policies in question cover only "property damage" caused by an "occurrence." The policies define "occurrence" as "an accident including continuous or repeated exposure to

---

[1] Plaintiff issued CGL policy number MPA-8A9475, with effective dates of October 14, 1992, through October 14, 2000, and policy number MPA-5E4824, with effective dates of October 14, 2000, through October 14, 2001, to Defendant Cambridge.

substantially the same general harmful conditions" and "property damage" as "[p]hysical injury to tangible property" and "[l]oss of use of tangible property that is not physically injured." (Compl. ¶ 7.) Additionally, the policies exclude "property damage" to " 'impaired property' or property that has not been physically injured, arising out of . . . [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work.' " (Compl. ¶ 8.)

In the complaint, Plaintiff Harleysville refers to various claims and/or complaints against Defendant currently pending in the Beaufort County Court of Common Pleas.[2] The court does not have the underlying state court complaints before it; however, Plaintiff Harleysville's complaint asserts that these underlying claims and/or complaints involve allegations of damages to various homes constructed by Defendant. In this declaratory judgment action, Plaintiff Harleysville seeks a declaration that damage to the property constructed by Defendant Cambridge does not constitute an "occurrence" under the CGL policies issued by Plaintiff to Defendant, pursuant to the South Carolina Supreme Court's decision in *L-J, Inc. v. Bituminous Fire & Marine Ins. Co.*, 366 S.C. 117, 621 S.E.2d 33 (2005).[3] Thus, Plaintiff seeks a declaration that it has no duty to defend or indemnify Defendant in these underlying state court claims.

On October 24, 2005, Plaintiff filed a motion for leave to amend the complaint to add three

---

[2] For example, Plaintiff refers to *Wallace Estates, Ltd. v. Cambridge Building Corp.*, C.A. No.: 03-CP-07-2126; *Blake v. Cambridge Building Corp.*, C.A. No.: 03-CP-07-1037; *Zampino v. Cambridge Building Corp.*, C.A. No.: 04-CP-07-1554; *Kirkland v. Cambridge Building Corp.*, C.A. No.: 02-CP-07-738; and *Leermakers v. Cambridge Building Corp.*, C.A. No.: 03-CP-07-2002. In all, Plaintiff refers to thirteen underlying state court claims and/or potential claims.

[3] The Supreme Court of South Carolina originally reversed the South Carolina Court of Appeals in *L-J, Inc. v. Bituminous Fire & Marine Ins. Co.*, 2004 WL 1775571 (Feb. 3, 2005). However, on rehearing, the Supreme Court of South Carolina withdrew and superceded its February 3, 2005, opinion with *L-J, Inc. v. Bituminous Fire & Marine Ins. Co.*, 366 S.C. 117, 621 S.E.2d 33 (2005). The court denied a rehearing on November 10, 2005.

2

more homeowners' claims against Defendant Cambridge.  Plaintiff states: "The coverage issues in these three new claims are identical to the issues in the ten claims already before the Court, *i.e.* whether the claims arise from an 'occurrence'; whether they constitute 'property damage'; and whether the claims allege only damage to property arising from a defect, deficiency, inadequacy or dangerous condition in Cambridge's work."  (Pl. Mot. to Amend at 1-2.)  The court granted Plaintiff's motion to amend, and on December 1, 2005, Plaintiff filed its amended complaint.

On December 2, 2005, Defendant Cambridge filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that this action is not proper for adjudication under the Federal Declaratory Judgment statutes, 28 U.S.C. §§ 2201 and 2202, as well as under Rule 57 of the Federal Rules of Civil Procedure.  Plaintiff filed a memorandum in opposition to Defendant's motion to dismiss on December 20, 2005.[4]

## DISCUSSION

**I.**     ***L-J, Inc. v. Bituminous Fire & Marine Ins. Co.***

In *L-J, Inc.*, an insured general contractor constructed a road which quickly began to deteriorate as a direct result of faulty workmanship.  366 S.C. 117, 621 S.E.2d 33.  After the insured contractor settled its breach of contract, breach of warranty, and negligence claims, it sought indemnification from its insurer.  *Id*.  Consequently, its insurer brought a declaratory judgment action seeking to determine whether the CGL policy it issued to the contractor covered the damage to the roadway system.  *Id*. at 120, 621 S.E.2d at 34.  In finding that the damage caused to the roadway system did not constitute an occurrence under the specific facts of that case, the court

---

[4] On April 25, 2006, Plaintiff filed a motion to bifurcate the issues of insurance coverage and bad faith.  Because Defendant consented to Plaintiff's motion, the court granted Plaintiff's motion in an Order filed June 2, 2006.

3

stated:

> [T]hese negligent acts [of the contractor during road design, preparation, and construction] constitute faulty workmanship, which damaged the roadway system only. And because faulty workmanship is not something that is typically caused by an accident or by exposure to the same general harmful conditions, we hold that the damage in this case did not constitute an occurrence.

*L-J, Inc.*, 366 S.C. at 123-24, 621 S.E.2d at 36. In footnote four, the court stated: "The CGL policy may, however, provide coverage in cases where faulty workmanship causes a third party bodily injury or damage to other property, *not in cases where faulty workmanship damages the work product alone*." *Id*. (emphasis in original).

In *L-J, Inc.*, the court noted that it found the New Hampshire Supreme Court's analysis in *High Country Assocs. v. New Hampshire Ins. Co.*, 648 A.2d 474 (1994), "helpful in distinguishing between a claim for faulty workmanship versus a claim for damages in the work product caused by the negligence of a third party." *Id.* (citing *High Country*, 648 A.2d 474). In *High Country*, the New Hampshire Supreme Court held that where the complaint alleged negligent construction that resulted in property damage caused by continuous exposure to moisture, and not merely negligent construction damaging only the work product, the CGL policy provided coverage. *Id*. at 477. The complaint in *High Country* alleged:

> [a]ctual damage to the buildings caused by exposure to water seeping into the walls that resulted from the negligent construction methods of High Country Associates. The damages claimed are for the water-damaged walls, not the diminution in value or cost of repairing work of inferior quality. Therefore, the property damage described in the amended writ, caused by continuous exposure to moisture through leaky walls, is not simply a claim for the contractor's defective work.

*Id*. Thus, the court in *High Country* held that "the Association alleged negligent construction that resulted in an occurrence, rather than an occurrence of alleged negligent construction." *Id.* at 478.

In contrast to *High Country*, the complaint in *L-J, Inc.*, "did not allege property damage

4

beyond the improper performance of the task itself." *L-J, Inc.*, 366 S.C. at 124, 621 S.E.2d at 36 Rather, the complaint alleged breach of contract, breach of warranty, and negligence claims, which all "repeated verbatim the same allegation – faulty workmanship in completing the project." *Id.* Accordingly, the court in *L-J, Inc.* held that the damage did not constitute an occurrence. *Id.*

In the present case, as previously mentioned, Plaintiff Harleysville seeks a declaration that damage to certain property constructed by Defendant Cambridge does not constitute an occurrence under the CGL policies it issued to Defendant. Thus, Harleysville seeks a declaration that it has no duty to defend or indemnify in various underlying state court suits involving those CGL policies. Relying upon the South Carolina Supreme Court's decision in *L-J, Inc.*, Plaintiff Harleysville asserts that "the law of South Carolina is settled: there is no insurance coverage for construction defects claims against general contractors under CGL policies." (Pl.'s Response in Opp. at 3.) Contrary to Plaintiff's assertion, however, this court finds that *L-J, Inc.* does not necessarily reflect "settled" law. *See Penn. Mutual Ins. Co. v. Ely Wall & Ceilings, Inc.*, 2006 WL 569589 (D.S.C. March 6, 2006) ("[C]ontrary to the plaintiff's position that the *L-J, Inc.* opinion establishes that there is simply no coverage under CGL policies for faulty workmanship and construction, this court finds that the *L-J, Inc.* opinion does not necessarily reflect 'settled' law as to the issue of 'occurrence' and coverage under the CGL policies at issue in this case.").

In any event, the court must determine whether to proceed with this declaratory judgment action; in addition to considering the South Carolina Supreme Court's decision in *L-J, Inc.*, the court also considers the Federal Declaratory Judgment Act ("the Act") and *Penn. Mutual*, a recent South Carolina District Court case addressing substantially the same issue currently before the court. *See*

5

28 U.S.C. § 2201; *Penn. Mutual*, 2006 WL 569589.[5]

## II.     The Federal Declaratory Judgment Act

Pursuant to the Federal Declaratory Judgment Act and Federal Rule of Civil Procedure 57, federal courts have discretion to exercise jurisdiction over a declaratory judgment action. Specifically, 28 U.S.C. § 2201 provides in part: "In a case or actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201 (emphasis added).

The United States Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling act, which confers a discretion on the courts rather than an absolute right upon the litigant.' " *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).  "The Fourth Circuit has explained that a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' " *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)).  "When a related state court proceeding is pending, however, considerations of federalism, efficiency, and comity should inform the district court's decision whether to exercise jurisdiction over a declaratory judgment action." *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (internal quotations and citations omitted).  To determine whether to proceed with a federal declaratory judgment action when a related state court proceeding

---

[5] The Honorable R. Bryan Harwell issued the Order in *Penn. Mutual*, 2006 WL 569589.

is underway, the Fourth Circuit has focused on the following four factors for guiding the analysis:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping."

*Penn-America Ins. Co.*, 368 F.3d at 412 (internal citations omitted); *see also Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994) (setting forth these four factors).[6] In utilizing these four factors to determine whether the present declaratory judgment action is appropriate, the court finds particularly helpful Judge Harwell's analysis in *Penn. Mutual*, 2006 WL 569589.

### A.    Does South Carolina have a strong interest in having its courts decide this issue?

In *Penn. Mutual*, an insurance company filed suit against its insured, Ely Wall & Ceilings, Inc., seeking a declaration that it owed no duty to defend or indemnify under six CGL polices issued to the insured. In determining whether to proceed with the declaratory judgment action, the South Carolina District Court considered the above-mentioned factors. First, with respect to South Carolina's interest in having its courts decide the issue, Judge Harwell outlined the South Carolina Supreme Court's decision in *L-J, Inc.*, 621 S.E.2d 33, and stated the following:

> As reflected above, while some may argue that the *L-J, Inc.* case establishes a clear rule of law of no coverage under a CGL policy where there is faulty workmanship, others may argue that the *L-J, Inc.* case establishes that each case is fact specific and driven by factual determinations. Thus, this court is of the opinion that because the issues of state law that are presented in this case are so close, problematic, and

---

[6] *Wilton* overruled portions of *Nautilus* dealing with appellate standards of review. *See* 515 U.S. 277. However, the factors articulated in *Nautilus* with regard to whether to a court's exercise of discretion in a declaratory judgment action remain applicable. *See Penn-America Ins. Co.*, 368 F.3d at 412.

7

difficult, South Carolina has an exceptional, counter-veiling interest in litigating the issues in its own courts. Likewise, for the above-mentioned reasons, the court finds the plaintiff's statement to this court that this case involves only the routine application of settled principles of law to be troublesome and somewhat misleading.

2006 WL 569589, at *7.[7] Ultimately, the court in *Penn. Mutual* determined that "South Carolina has an extremely strong interest in having these state law issues decided in state court, a forum better equipped to create South Carolina law which will be consistent with its public policy." *Id.* at *8.

Here, this court faces the same issue that was before the court in *Penn. Mutual*,[8] and ultimately, this court agrees with Judge Harwell's conclusion that South Carolina has a strong

---

[7] In emphasizing the importance of this issue to the State of South Carolina, Judge Harwell added:

The court also takes note that the entire construction and insurance Bar of the State of South Carolina were in turmoil after the initial decision of the South Carolina Supreme Court in the *L-J, Inc.* case. "As soon as the supreme court released this opinion, construction lawyers all over South Carolina began receiving calls from insurance companies as these companies began declining settlement offers, cancelling scheduled arbitrations, and refusing to provide coverage under existing policies." Anne Marie McNeil, *L-J, Inc. v. Bituminous Fire & Marine Insurance Co.: In Determining Coverage Under Commercial General Liability Policies, Should Policy Language or Public Policy Control?* 56 S.C. L. REV. 791, 801 (2005).

This court also finds that the importance of the *L-J, Inc.* decision can be best appreciated by looking at the multiple Amicus Curiae involved in the rehearing. They include the South Carolina Community Association Institute, CCM, Benchmark, American Subcontractors, National Association of Mutual Insurance Companies, South Carolina Trial Lawyers Association, American Insurance and Property Casualty, Independent Insurance Agents and Brokers of South Carolina, National Association of Home Builders, et al., and The Carolinas Associated General Contractors'. The sheer number of Amicus Curiae reflects and signifies the magnitude of this insurance coverage issue in the construction litigation field.

2006 WL 569589, at *7.

[8] Additionally, as in the present case, the court in *Penn. Mutual* also faced a motion to dismiss based on abstention grounds.

interest in having its courts decide this issue. Analysis of the first factor, therefore, supports abstention from this matter.

> **B.    Can South Carolina state courts resolve this issue more efficiently than federal court?**

The second factor the court must consider in determining whether this declaratory judgment action is appropriate is whether South Carolina state courts can resolve this matter more efficiently than federal court. The court finds that without a doubt, South Carolina state courts can resolve this issue more efficiently.

First, as previously mentioned, this court is of the opinion that *L-J, Inc.* does not necessarily represent settled law on this issue. As pointed out by Judge Harwell, differing opinions exist as to the meaning of *L-J, Inc. See Penn. Mutual*, 2006 WL 569589 at *7 ("[S]ome may argue that the *L-J, Inc.* case establishes a clear rule of law of no coverage under a CGL policy where there is faulty workmanship, others may argue that the *L-J, Inc.* case establishes that each case is fact specific and driven by factual determinations.").

Second, should *L-J, Inc.* in fact establish that each case is driven by factual determinations, then it would be impossible for this court to determine the issues presently before it without access to the underlying state court pleadings.[9] As an additional matter, the court notes that Plaintiff's complaint references some thirteen claims and/or potential claims, all of which may or may not involve the same factual determinations. Ultimately, due to the unsettled issues of state law involved and because both the state and federal actions stem from the same facts, the court agrees

---

[9] In its complaint, Plaintiff incorporates by reference all of the allegations contained in the underlying state court complaints. However, Plaintiff does not attach copies of those complaints, and this court is without access to the underlying state court pleadings.

with Judge Harwell that "it [would be] more efficient to resolve all litigation in a single court system." *Penn. Mutual*, 2006 WL 569589 at *9 (citations and internal quotations omitted).

### C. Would permitting this action to proceed result in unnecessary entanglement between the federal and state courts?

The third factor for the court to consider asks whether permitting this declaratory judgment action to proceed would result in unnecessary entanglement between the state and federal courts. While somewhat similar to the second factor, this factor requires the court to consider whether any decision by this court would have a preclusive effect in the state court actions. *See id.* (finding a threat of unnecessary entanglement where the court's rulings on coverage would be binding in the state court proceedings).[10] As in *Penn. Mutual*, it is clear that a decision by this court would have a preclusive effect in state court actions. In fact, Harleysville brought this action precisely because this court's ruling would be binding in any underlying state court actions. Thus, it appears that permitting this action to go forward likely would result in unnecessary entanglement.

Furthermore, because the present case involves issues of coverage in at least thirteen underlying claims and/or potential claims and because "the factual questions presented in the state court actions may be substantially intertwined with a resolution of the insurance coverage issues presented in this federal declaratory judgment action," the court finds that interests of federalism, efficiency, and comity support abstention from this matter. *Penn. Mutual*, 2006 WL 569589 at *9.

### D. Is federal declaratory relief being used as a device for procedural fencing?

With regard to the fourth factor, the court has no reason to believe that either party is using

---

[10] As mentioned, the present case involves some thirteen underlying state court claims and/or potential claims. In *Penn. Mutual*, the court was faced with eleven underlying state court claims. *See* 2006 WL 569589 at *9, n. 11.

federal declaratory relief merely as a device for procedural fencing.  As stated in *Nautilus*:

> Though the parties might have filed this declaratory judgment action in state court, they chose to proceed in federal court instead, as they were authorized to do so by 28 U.S.C. §§ 1332 and 2201.  Having done so, they are entitled to have the federal court issue the declaration of rights and duties that they seek, *unless* the considerations of federalism, efficiency, and comity outlined in *Mitcheson* are strong enough to overcome the federal policy in favor of awarding declaratory relief where it will "serve a useful purpose in clarifying and settling the legal relations in issue" and "afford relief from the uncertainty, insecurity, and controversy giving rise to the controversy."

15 F.3d at 380 (quoting *Quarles*, 92 F.2d at 324); *see also Penn. Mutual*, 2006 WL 569589, at *9 (quoting the same).

After a thorough consideration of this matter, considered especially in light of Fourth Circuit precedent and our sister court's decision in *Penn. Mutual*, the court concludes that dismissal of this matter is appropriate, due not only to the unsettled nature of South Carolina law on this issue, but also to considerations of federalism, efficiency, and comity.  Because this court can state it no more eloquently than Judge Harwell, the court borrows the following:

> This court has come to the thoughtful yet reluctant conclusion, and not on a whim or personal disinclination, that the questionable extent and scope of the final *L-J, Inc.* decision, coupled with a concern for federalism, necessitates bowing to a dismissal of this matter and exercising the court's discretion to decline jurisdiction over this declaratory judgment action.

2006 WL 569589, at *10**.**  Accordingly, the court grants Defendant's motion to dismiss based on abstention grounds.

## **CONCLUSION**

It is, therefore, **ORDERED** for the foregoing reasons, that Defendant's motion to dismiss is hereby **GRANTED**.

    **AND IT IS SO ORDERED.**

                                                                      PATRICK MICHAEL DUFFY
                                                                       United States District Judge

**Charleston, South Carolina**
**July 19, 2006**